```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ELIZABETH MOSHER,
                    Plaintiff,                    05-CV-6454T

v.                                                DECISION
                                                  and ORDER
JOANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff, Elizabeth Mosher ("Mosher") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her Disability Insurance Benefits ("Disability"), and Childhood Disability Benefits.  On August 25, 2006, plaintiff moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  On August 25, 2006, the Commissioner cross-moved for judgment on the pleadings.

For the reasons that follow, the case is remanded to the Secretary for calculation of benefits.  Accordingly, plaintiff's motion for judgment on the pleadings is granted and defendant's motion for judgment on the pleadings is denied.

## BACKGROUND

Plaintiff's mother protectively filed plaintiff's first application for childhood disability benefits when Mosher was 15 years old on May 29, 2001. (Tr. 104-106) Plaintiff's mother filed

a second application for SSI on behalf of her daughter as an adult child on June 4, 2001 alleging an onset date of disability of March 3, 1999. (Tr. 104, 311-312)  Plaintiff contends that she is disabled by a combination of anxiety, depression, attention deficit hyperactivity disorder (ADHD), posttraumatic stress disorder (PTSD), non-verbal learning disability and asthma.  On August 21, 2001, plaintiff's claim was denied. (Tr. 42)  Plaintiff filed a request for a hearing before an ALJ which was held on August 13, 2003. Plaintiff, her mother, and her psychiatrist, Dr. Sandra Mitzner, testified at the hearing and were represented by counsel. (Tr. 318-373)  In his decision dated March 25, 1999, the ALJ concluded that plaintiff was not disabled.  After plaintiff requested a review of this decision, by decision dated December 15, 2003, the Appeals Council remanded the case to the ALJ. (Tr. 76-79)  The Appeals Council found that the ALJ did not adequately  evaluate plaintiff's asthma, anxiety, depression, ulcer and restless leg syndrome nor properly evaluate the evidence from plaintiff's treating physician, the state medical consultant and the opinion of plaintiff's social worker. (Tr. 77)

A second hearing was scheduled for November 10, 2004 at which plaintiff, her mother, a medical expert and vocational expert all testified.  (Tr. 372-425) Plaintiff's claim of disability was again denied by decision dated January 25, 2005. (Tr. 14-28) The decision of the Commissioner became final after the Appeals Council denied

2

plaintiff's request for review. (Tr. 7)  Plaintiff commenced this action on September 2, 2005.

Dr. Sandra Mitzner, a child and adolescent psychiatrist, began treatment of Mosher in August, 1998, when Mosher was 12 years old. She had longstanding difficulties with inattention, impulsivity, hyperactivity, uneven cognitive development, poor motor planning, and poor social skills exacerbated by increasing anxiety and sleep disruption. (Tr. 165) Dr. Mitzner treated plaintiff with counseling coupled with psychostimulant, anti-depressant and anti-anxiety medications. (Tr. 165)

A psychological evaluation of Mosher conducted by a school psychologist of the Gates Chili Central School District in March 1999, indicated that plaintiff performed quite well through fifth grade despite the effects of ADHD. (Tr. 226) Scores on standardized intelligence tests yielded "uneven" results with a Verbal scale score within the superior range and a performance scale score within the average range. (Tr. 226) She experienced difficulty in producing written language due to fine motor delays. (Tr. 226) In middle school, Mosher's grades ranged from a low of 78 in Reading to a high of 89 in Science. (Tr. 226) Her scores on standardized group achievement tests were within the "high average" range.  Plaintiff was permitted classroom modifications and extra assistance from specialists from within the school.  As of seventh grade, plaintiff's general intellectual abilities were assessed to be within the average range. (Tr. 227)

In July, 1999, plaintiff was referred to Strong Memorial Hospital's Child and Adolescent Psychiatry Program for her struggles with establishing and maintaining friendships. (Tr. 275-279) Plaintiff was described as behaving inappropriately with peers and was unable to read meaningful social cues and had a poor tolerance for frustration. (Tr. 279) Plaintiff was placed in the adolescent girls' social skills group with the goals of helping plaintiff improve self-regulation of her anxious symptoms and increase her ability to stay on topic in a conversation. Also, she was to improve frustration tolerance and anger management. (Tr. 280)

As of June, 2001, Mosher was taking Dexedrine and Dexostat to treat ADHD, Prozac and Clonazepan for anxiety and emotional disturbance, Ferritin for restless leg syndrome, Zyrtedc and Flonase for allergies and Albuterol inhaler for asthma. (Tr. 231) Dr. Mitzner assigned Mosher a Global Assessment of Functioning ("GAF") score of 50-55 which represents serious impairment (50) to moderate difficulty (51-55) in social occupational or school functioning. (Tr. 208)

On July 12, 2001, plaintiff was examined by an independent state examiner for a child and adolescent psychiatric evaluation. (Tr. 256-260) In this evaluation, Dr. Karen Davenport reviewed plaintiff's history as well as examined plaintiff in person. Dr. Davenport noted plaintiff's history with ADHD, restless leg syndrome and inability to sleep, sexual abuse by her father when she was 14 years old, and aggressive behavior both towards her brother

4

and at school. (Tr. 256-257) Dr. Davenport described plaintiff's impairment with attention and concentration as "mild" and her recent and remote memory skills as "mildly impaired". (Tr. 258) Plaintiff required a lot of coaching to complete daily activities and Dr. Davenport opined that she would likely have some "mild difficulty" in attending to, following and understanding age appropriate directions due to ADHD. (Tr. 259) Dr. Davenport recommended that plaintiff continue with her psychological treatment to address her symptoms of ADHD anxiety, depression, and sexual abuse. (Tr. 260) Dr. Davenport's prognosis was "guarded." (Tr. 260)

A consultative pediatric examination of July, 2001 described plaintiff's medical history as positive for asthma, triggered by allergens such as animal dander and chlorine and inability to fall asleep and restless leg syndrome. (Tr. 261) Dr. George Wootan, who conducted this examination, found that he saw no physical reason that plaintiff could not engage in activities which require sitting, standing, walking and climbing stairs.  Further he found no limitations with lifting or carrying, vision, speech or hearing. (Tr. 264)

Mosher's Individualized Education Program ("IEP") from her senior year of high school (2003-2004) indicated that Mosher was functioning below her chronological age in the areas of cognitive ability and in the area of pragmatic/social speech development. (Tr. 167) Her grades in Spanish Composition and Global History and Geography were at the 72nd percentile.  She scored at the 77th

percentile in the language portion of the Weschler Individual Achievement Test, 68th percentile in math, 70th percentile in reading and 45th percentile in writing. (Tr. 167) Full scale WISC III score was 106, scoring 102 in Performance and 108 in Verbal. By the end of the senior year, Mosher met her annual goals in reading, social studies, and social/behavioral counseling as identified on her IEP. Plaintiff was afforded 25% more time in taking all of her tests and quizzes and she was permitted to take them over several sessions over the school day. (Tr. 174) Mosher received counseling twice a week at school. Continuing issues to work on were her attendance and hygiene. (Tr. 178-180)

Dr. Mitzner completed a "Children's SSI Functional Assessment Form on October 12, 2004 on behalf of Mosher. (Tr. 284-293) Dr. Mitzner identified plaintiff's impairments as depressive disorder, ADHD, obsessive compulsive traits and non-verbal learning disability. (Tr. 284) Dr. Mitzner rated plaintiff's impairment of non verbal learning disability as "moderate" and noted this disability was connected to her poor social adjustment. (Tr. 286) Dr. Mitzner described plaintiff's continued need for adult support and guidance at home and school to care for own personal needs. (Tr. 287) Dr. Mitzner described plaintiff's difficulty completing tasks in a timely manner as "less than marked". (Tr. 288)

Mosher was taking classes at MCC in the fall of 2004. In a "Children's SSI Functional Assessment Form" dated October, 2004, Dr. Carolyn Cleary, a board certified pediatrician, opined that

6

Mosher's learning disabilities and ADD would impair her "learning and ability to get certain jobs." (Tr. 291) Dr. Cleary found plaintiff's intellectual skills, communication skills and behavior skills to be age appropriate. (Tr. 291-292) Dr. Cleary described plaintiff's impairment with fine motor skills as "less than marked" and noted that plaintiff was able to care for her own personal needs. (Tr. 292)

At the first hearing on August 13, 2003 Mosher's mother testified that Mosher moved from being an average student receiving B/C grades to B/A grades after she was taking medication to ease her test taking anxiety. (Tr. 337) Mosher's mother also testified that plaintiff was graduating from high school the following spring, she planned to attend college to pursue a career in special education. (Tr. 327) Plaintiff testified that she gets herself dressed without assistance and that although she is able to clean herself she often doesn't have time to "fit it in (her) schedule". (Tr. 339-340) Plaintiff has participated in Girl Scouts for 12 years and earned her Silver Award. (Tr. 341) She was working on receiving her Gold Award at the time of the hearing. (Tr. 341) In furtherance of this award, plaintiff performed the required number of community service hours and earned four interest project patches.  She also had submitted her application and got her project idea approved. (Tr. 342-343) Plaintiff's community service time involved working in a collections site for donated food and sorting the food items into categories and working as a junior counselor at a camp.

Dr. Mitzner testified that Mosher struggled with heightened anxiety and difficulties with sleep. (Tr. 357) When Mosher has heightened anxiety, she had more difficulty with organization and completion of work and more peer conflicts. (Tr. 357) Dr. Mitzner testified that plaintiff had episodes of heightened anxiety approximately once a month. (Tr. 358) When asked how plaintiff could complete the necessary requirements to achieve a Gold Award in scouts, Dr. Mitzner explained that Mosher's parents were very involved in scouting and were extremely supportive and acquainted with getting extra help for special needs scouts. (Tr. 359)

At the time of the second hearing on November 4, 2004, plaintiff was attending Monroe Community College.  Plaintiff testified that during this first semester, she was receiving some accommodations for more test taking time and being permitted to record the lectures instead of taking notes. (Tr. 379) She had already scored in the 80s on her math test but was not doing as well in her course on psychology. (Tr. 379) Plaintiff testified that she had asthma but it was successfully treated with an inhaler for episodes and Advair for daily prevention. (Tr. 382)  Plaintiff admitted that she did not have an ulcer nor sleep apnea. (Tr. 384) Plaintiff testified that she has continuing problems interacting with others such as approaching a teacher to discuss a problem but she did not have any problems going to a store and purchasing items by interacting with the store clerk. (Tr. 387-388)

Plaintiff started working at an adult home serving meals as a work/study job during high school, and after graduation, she was hired part time. (Tr. 397) After a month of work, plaintiff was fired after a miscommunication between plaintiff and her boss concerning time off taken for an injury. (Tr. 396-397)

Plaintiff testified that she could not hold down a full time job because she gets inadequate sleep because of restless leg syndrome. When asked how much sleep she does get, plaintiff testified that she gets six to seven hours a night but needs more than nine hours of sleep to feel rested. (Tr. 398)

In her free time, plaintiff plays games on the computer, goes to movies with friends and goes to restaurants. (Tr. 403-404)

Dr. Mitzner submitted a letter in September 2005 updating plaintiff's condition. Dr. Mitzner continued to believe that Mosher was too disabled to work or attend school full time. Although plaintiff started college, she ultimately dropped out of school. Dr. Mitzner further noted that despite extensive treatment and support systems, Mosher had been unable to succeed in either school or work. She concluded that Mosher's diagnoses were Anxiety Disorder with compulsive traits, Depressive Disorder, ADHD and Nonverbal learning disabilities, that she considered these conditions chronic and long term and that she was arranging for treatment in a program designed for the chronic and persistently mentally ill.

Dr. Nellie Mitchell, a consultative medical examiner and Dr. Peter Manzi, a vocational expert, testified at the second hearing of November 10, 2004. (Tr. 414-423) Dr. Mitchell reviewed the records and concurred with plaintiff's diagnosis of ADHD with some signs of oppositional/defiant syndrome. (Tr. 416) Dr. Mitchell did not find a clear indication of depression or PTSD. (Tr. 419) Dr. Mitchell testified that plaintiff satisfies part A of listing 112.11 but did not find that plaintiff had a "marked limitation." (Tr. 418)  Dr. Mitchell ruled out listing 11.202 because she felt that plaintiff was able to take care of the activities of daily living.  The vocational expert, Dr. Manzi, testified that given a hypothetical in which an individual would not be required to read instructions as part of the job nor adhere to a production quota and be a younger individual with a high school education, there would be several jobs available including a laundry worker and cleaning position. (Tr. 422-423)

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).

To qualify for SSI benefits, a child under the age of 18 must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(I).

The Commissioner's regulations set forth a three step sequential evaluation process for determining whether a child meets the statutory definition of disability. The first step is to determine whether the child is working at the level of "substantial gainful activity." If the child is not working, the claim proceeds to the second step of the evaluation. 20 C.F.R. §416.924(a), (b). At the second step, the Commissioner determines whether the child has a "severe" impairment. A "severe" impairment is defined as more than a "slight abnormality or combination of slight abnormalities" that causes "more than minimal limitations." 20 C.F.R. §416.924(2). A claim that satisfies this standard proceeds to the third step, in which the Commissioner determines whether the child has an impairment or combination of impairments that "meet, medically equal, or functionally equal in severity a listed impairment . . ." 20 C.F.R. §416.924(d).

A child functionally equals a listed impairment if he or she has an "extreme" impairment in one of six areas of functioning, or a "marked" impairment in two of six areas of functioning. The six areas of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) self-care; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I-iv).

By decision dated August 28, 2003, the ALJ went through the three step analysis and concluded that plaintiff had not been under a disability. (Tr. 39) First, he found that plaintiff had a combination of impairments that he considered "severe" but not of "listing-level severity." (Tr. 33) Relying on evidence that plaintiff had earned her silver award and was working toward her gold award in scouting, her school work showed she was doing well in school, her school counselor's records indicating that plaintiff was making progress in most counseling goals and the GAF score of 55 indicating moderate symptoms for post traumatic stress disorder, the ALJ found less than marked limitations in any of the "B" criteria of either of sections 112.06 and 112.11 of the listings . (Tr. 35) However, the ALJ did conclude that plaintiff's ADHD was severe as it did cause her more than minimal functional limitations. (Tr. 36) At the final step, the ALJ considered whether plaintiff's impairments interfered seriously with plaintiff's ability to independently initiate, sustain or complete activities. The ALJ found that plaintiff had less than marked limitations in every domain. (Tr. 40)

The Appeals Council reviewed this decision and remanded the claim back to the ALJ to (1) obtain all treatment and examination records for plaintiff; (2) evaluate all of the impairments and provide appropriate rationale; (3) obtain evidence from a medical expert regarding the nature and severity of the impairments and their impact on plaintiff's ability to function in an age

12

appropriate manner; (4) further evaluate plaintiff's subjective complaints, her testimony and the testimony and statements of her mother and Dr. Mitzner; and (5) give further consideration to plaintiff's ability to function in an age appropriate manner pursuant to the guidelines. (Tr. 78)

The second decision of the ALJ dated January 25, 2005 considered both the initial application as a minor child as well as the second application for plaintiff as an adult child. (Tr. 14) The ALJ specifically considered the school records, medical records and testimony of witnesses. He found that plaintiff's "asthma, sensory integration delay, ulcer, depression, anxiety disorder, obsessive compulsive disorder, Asperger's syndrome and restless leg syndrome are not severe because they do not cause any significant work-related symptoms." (Tr. 21) He also concluded that plaintiff did not have an impairment or combination of impairments listed in Appendix 1, subpart P, Regulation No. 4. Finally, the ALJ did not find plaintiff to be credible. (Tr. 27)

In evaluating adult disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine

whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work.  If he is not, the fifth and final inquiry is whether the claimant can perform any other work.  Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure.  In his decision, the ALJ found that plaintiff (1)has no past relevant work experience; (2) that plaintiff had ADHD, and PTSD and some handwriting problems that were severe; (3) did not have an impairment listed in Appendix 1, subpart P, Regulation No. 4; and (4) have the ability to perform work such as launderer and furniture cleaner.  (Tr. 26-28)

Plaintiff argues that the ALJ erred in failing to find a marked impairment in two domains: interacting and relating to others and self-care.  Further, plaintiff faults the ALJ for failing to controlling weight to plaintiff's treating physician, Dr. Mitzner. The Commissioner concurred that the ALJ decision did not contain the required analysis of a treating physician opinion but contends that the case should be remanded for further proceedings.

The ALJ finding that Mosher had no marked impairments is not supported by substantial evidence.  The ALJ failed to properly

evaluate the opinion of plaintiff's treating physician, Dr. Mitzner. In light of the fact that this case has already been remanded to the ALJ for further proceedings, that two hearings have already been held, that the record is fully developed, and further administrative proceedings would serve no purpose, a remand for the sole purpose of calculating benefits is appropriate.  The record is clear that for the closed period May 2001 through February 2004, plaintiff has shown disability and eligibility for children's SSI benefits. Plaintiff is impaired in the domain of interacting and relating to others.  The record supports treating physician Dr. Mitzner's opinion that plaintiff fails to respond appropriately to peers as well as to emotional and behavioral cues.  School records consistently describe plaintiff as functioning below her chronological age in the area of social development and failing to relate appropriately to peers in the classroom.  Plaintiff is also impaired in the domain of caring for herself.  Plaintiff not only had difficulty taking care of her personal hygiene needs but she also exhibited chronic problems with her eating and sleeping habits.

       Dr. Sandra B. Mitzner's assessment of the claimant's mental condition portrays an adolescent who requires intensive psychiatric attention for long-standing difficulties of inattention, impulsivity, hyperactivity, uneven cognitive development, poor motor planning, and poor social skills which are exacerbated by increasing anxieties with associated sleep disruption.  The ALJ failed to give

Dr. Mitzner's psychiatric opinions the controlling weight it clearly deserves.  This is a portrait of a disabled adolescent.

## CONCLUSION

I find that there is substantial evidence in the record to support a conclusion that plaintiff is disabled within the meaning of the Social Security Act.  Accordingly, the case is to be remanded to the Commissioner for calculation and payment of benefits in accordance with this decision and pursuant to 42 U.S.C. § 405(g).

ALL OF THE ABOVE IS SO ORDERED.


                            S/Michael A. Telesca
                            _____
                                MICHAEL A. TELESCA
                          United States District Judge

DATED:    Rochester, New York
          January 10, 2007